## In re TWO MINOR CHILDREN.

Supreme Court of Delaware.

May 31, 1967.

William Prickett, of Prickett, Ward, Burt & Sanders, Wilmington, for defendant below, appellant.

H. Albert Young and Bruce M. Stargatt, of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

This is an appeal from an order of the Superior Court granting to an adoptive

mother rights of visitation as to her adopted children.

## I.

In an earlier appeal (173 A.2d 876), this Court preserved the anonymity of the parties for the sake of the children. We do the same here, again referring to the adoptive father as X, the adoptive mother as Y and her second husband as Z. The present third husband of Y will be referred to as H.

By petition for habeas corpus, Y again seeks visitation rights denied to her in the earlier appeal in 1961. The children, a girl and boy, are now aged 13 and 11 respectively.

Under 13 Del.C. § 956, the Superior Court referred the matter to the Family Court for findings and recommendations. After hearing, the Family Court recommended denial of visitation, finding that visitation will not be in the best interest of the children. This was the conclusion of the Family Court notwithstanding a report of an eminent psychiatrist, retained by the Court as an impartial expert with the consent of both parties, favoring visitation as probably not harmful to the children and beneficial as to Y. Y objected to the Family Court's recommendations. On the basis of the Family Court record, supplemented by a private, unrecorded interview with the children, the Superior Court granted visitation rights, specifying one day each month in Delaware until the Fall of 1967 and, thereafter, one weekend each month during which Y could take the children to her home in Connecticut. X appeals.

## II.

Reference is made to the opinion in the earlier appeal for the factual background of this case. There, this Court reversed a very limited grant of visitation on the ground that, by her adulterous misconduct, Y had forfeited her rights. However, this Court there stated:

"We think therefore that the affording of even limited rights of visitation to Y at this time is premature and, therefore, an error in law. We do not say that Y by her past conduct has forever forfeited the right to visit with these children. If she continues to lead a stable moral life and demonstrates an emotional maturity which would not jeopardize the children's present well-adjusted situation, she may overcome the forfeiture. * *."

The present proceeding was instituted in January 1966. It appears that during the five year period between our earlier opinion and the hearing in the present proceeding, Y has led a stable and moral life and has demonstrated emotional maturity. She resided in the Wilmington area until 1963 with her prior husband Z. They then moved to California and lived near Y's father, a respected, retired business executive. He saw his daughter and her friends frequently; he testified to their good character and moral conduct. In June 1965, Y obtained a divorce from Z on the basis of his misconduct. In August 1966, she married H, a widower with whom she had been acquainted since the early years of her marriage with X. He is a teacher at a college preparatory school in Connecticut. Y and H now live on the campus; Y has adjusted well in the social and civic life of that community.

The children here involved, happy, normal and well adjusted, have been living with X in the Wilmington area. Y has not seen them, except for a passing meeting once in a store, since she left X in 1959. However, the parents of Y have kept in touch with the children and there has been visitation by them from time to time. The father of Y has established a trust fund for the children covering tuition for private school and the costs of summer camp. X is happily remarried and there are two children of this second marriage.

## III.

It is elementary, and agreed by all concerned, that the best interest of the chil-

dren is the primary consideration in this case. The rights and welfare of the parents are secondary. Nelson v. Murray, Del., 211 A.2d 842 (1965). But, though secondary, the parent of a minor child does have natural rights of visitation which must be recognized. Such rights may not be denied unless it is clear that affording the rights would be contrary to the child's best interests.

■ After careful review of the record, we cannot say that it is clear that visitation by Y at this time would be harmful to the children. Accordingly, we will not disturb the ultimate conclusion of the Superior Court that Y should no longer be deprived of her right of visitation.

However, we have some doubt that more than minimal visitation will be in the best interest of the children. There has been no contact or personal relationship between Y and the children for almost eight years of their relatively short lives. The children are now secure and well adjusted in a happy and harmonious home that may become disrupted by the increased bitterness and animosity renewed contacts between X and Y will probably create. The conflicts and tensions of divided loyalties may be visited upon the children by the creation of a new relationship with Y after so long a time, especially when they now address X's present wife as Mother. The present normal relationship of the two sets of children in the X household may be impaired by a renewal of a relationship with Y.

Such doubts impel us to the conclusion that the order below should be modified. We are unable to agree with the Superior Court's conclusion that the best interest of the children permits visitation to the extent provided by its order. Visitation should be limited, in our judgment, to one day per month, in the State of Delaware, in such manner as not to interfere with school or vacations or holiday observances with X's family; and, in any other way possible, the order of visitation should safeguard the children against the doubts we have expressed.

IV.

■ X asked to be relieved of the obligation to pay $250., being 50% of the fee of the psychiatrist employed by the Family Court as impartial expert witness. Since X agreed to the employment of the expert, we find no abuse of discretion in requiring him to share in the fee equally.

* * *

The judgment below is reversed and the cause remanded for the entry of a modified order consistent herewith.